Case 23-1388, Michael Gardner v. United States of America. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. You may proceed. Good afternoon, your honors, and may it please the court. My name is Katherine Claussen. I am a certified legal intern under the supervision of attorney Andrew Paulus. I am here today on behalf of the defendant appellant, Mr. Michael Taylor Gardner, and I would like to reserve three minutes of my time for rebuttal.  Your honors, I will get to explaining that Mr. Gardner's trial counsel's performance was both deficient and prejudicial to his case. But before I do so, I want to start with a quick timeline of this case because the timeline is everything. Not because it shows that she engaged in prior sex work, but because it showed that MV1 lied on the stand. Your honors, Mr. Gardner and MV1 knew each other in high school and then they fell out of contact. Years later, on August 27, 2015, they reconnected on Facebook and entered into a relationship. But before they reconnected, between the dates of August 18th and August 22nd, MV1 posted advertisements on Backpage.com for her own sex work and included her phone number for potential customers to contact. Then Mr. Gardner was charged with the sex trafficking of MV1. At his trial, Mr. Gardner's trial counsel elicited testimony from MV1 that her sex work was entirely Mr. Gardner's idea and not her own, and that she never posted any advertisements on Backpage.com. It was only Mr. Gardner that had done so. But think about that. Could her testimony possibly have been true if those posts were made before her and Mr. Gardner were even in contact? Your honors, the story that MV1 tells on the stand to the jury is impossible. But the only reason you know that it's impossible is because you know the timeline. The problem is that the jury did not know the timeline, and that is completely at the fault of Mr. Gardner's trial counsel, and his failure to confront the witness with the impossibility of her story was deficient performance. Well, isn't it true, though, that defense counsel was very clear when he was questioning MV1 or BH about this particular, the questions that you're asking? He particularly said, I'm going to ask you questions about the time after you reconnected with Mr. Gardner. And in that time frame, he asked, so when you got together with Michael in the summer of 2016, you started doing prostitution. Yes, but not right away. And it was Michael that got you to do this. It was not your idea. Right, it wasn't my idea. And then later he clarifies that he only wants to talk about the time after they reconnected, and then, so in that time frame, yes, he started off putting the ads on Backpage, not that she did. So I guess I don't know how it's a lie. Now, he's limited because of Rule 412. He can only ask her about, as substantive evidence, he can only ask her about the time after they reconnect. So he asks her that question, and she answers. So I don't understand how she's lying. She might not be telling the whole truth, but Rule 412 kind of doesn't permit her to tell the whole truth, and doesn't permit the questions to be asked about the whole truth, right? Well, Your Honor, I would say that, yes, there could have been some, based on his questions and the pretext to his questions, could have created some ambiguity on that. But we think it was very clear, based on the words that she said, that she had not ever posted Backpage advertisements, and that it was only Mr. Gardner. So I think the words that she chooses maybe undoes that pretext, and that is why it creates the lie that 412 is permissible to show through his questioning. So I'm going to explain to you that counsel could have used this evidence, he should have used this evidence, and that he failed to do so. First, let's talk about the could have. The government contends that this evidence couldn't have been used, even if counsel wanted to. But we know that, sorry, they point to Rule 412 and the prior motion in limine to show that this was not admissible. But we know that 412 only prohibits two very specific things related to prior sex acts, and we know that it prohibits using that evidence to show that because they were previously a sex worker means that they were ordinarily more likely to lie on the stand, or that because they were previously a sex worker independently, they are more likely to do it under their own volition later. What we're trying to use it for doesn't relate to those issues at all, and our use is affirmatively deemed permissible in this court's prior opinion in United States v. Kettles. And the motion in limine also does not exclude this issue, because the motion in limine, by the government's own request, only excluded evidence outside of the period of the indictment, which ran from August 1st through October 31st, and the August 18th through 22nd advertisements fell squarely within that time frame. We also know that counsel should have used this evidence. We know he should have used this evidence because he told the jury that he would. In opening statements, counsel told the jury he would show them evidence that included back page advertisements from MV1's phone that would dispose of the idea that Mr. Gardner was responsible or caused her sex work, and then counsel elicited the very testimony that he had evidence to negate. And then we know that counsel knew he should have used it because he thought that he had. At one point, counsel referenced the August 2015 ads, at which point the government objected, noting that they were not already introduced, and counsel said, oh, I thought they were already introduced. And then he continued in... Is it your position that counsel should have, at that point, asked the district court for permission to introduce that evidence, notwithstanding the district judge having ruled against it in the motion in limine? He should have... Well, first he should have just had it to begin with, to confront the lies that she told on the stand. I'm not sure if that... Can you rephrase your question? The question is, if you've had a district judge say in a motion in limine ruling, you may not introduce certain evidence, what is the responsibility of a trial lawyer then in front of the jury to try to overcome that ruling on the motion in limine? I'm not entirely sure on the technicalities of introducing evidence, Your Honor, but I... At the end of the day, the failure to not do it at the time when it was certainly permissible under 412, and the motion in limine, is still an error. So your... I think your point is that the motion in limine itself didn't... Extended the whole period... The motion in limine only excluded things outside of the indictment range, and so the motion in limine itself would not have forbidden him from introducing those things, is that... Your Honor, his counsel thought he had used it, he just forgot. That is not trial strategy, that is a mistake, and it was a mistake that was materially prejudicial to Mr. Gardner's case. In order to convict Mr. Gardner, the government had to prove that he caused or forced MV1 to engage in sex work. And the government's case stood or fell on MV1's testimony. Your Honors, I like to think of the evidence as being in three buckets. You have bucket number one, which is evidence that comes directly from MV1's testimony. You have bucket number two, which is evidence that comes from outside of her testimony, but still requires the jury to believe her side of events over Mr. Gardner's. And then you have bucket number three, which is everything, anything that is completely independent of MV1's testimony. If counsel had done his job properly, and properly shown the August ads to prove the impossibility of MV1's story, you completely get rid of bucket number one. You get rid of her testimony, you show that she is not credible on the stand for this lie to the jury. And showing that she lied to the jury about those crucial statements taints the rest of her testimony. And if you destroy MV1's credibility in bucket number two, you severely diminish the strength of evidence in bucket number two. Because you now have circumstantial evidence with no causal link to the sex trafficking charge itself. You have some text messages and some questions of Mr. Gardner's proximity to the dates, but nothing shows anything beyond knowledge that he was dating somebody that was engaged in sex work. Well, there are a lot of text messages in which she's, for example, inquiring about particular sex acts that a client wants her to perform. And he's texting back, go ahead and do it. And then, oh, but wait, how much is that guy paying? So that kind of seems incriminating. It does. I can understand your point on how it looks incriminating. But at the end of the day, that is still circumstantial evidence that the text that says, it says do it LMAO, which arguably is very open to interpretation of to what degree that made her or caused her to engage in sex work. And that interpretation is reliant on her testimony.  So, I mean, she's a minor. So she can't consent anyway. He just needs to facilitate her engaging in sex work, right? And yeah. So then she's asking permission to do a certain thing. And he says, yeah, go ahead and do it. And then he says, I mean, he does say, you know, I'm laughing about this. But then he also says, oh, yeah, remind me. I don't remember the exact quote, but how much is that guy paying again? Your Honor, so you make a point of it. It looks like this is her asking for permission. In my reading, I never took it that way. But maybe that is the very thing that shows that this is a question that should have been left to the jury with full knowledge of her credibility. And they didn't have full knowledge of her credibility because she wasn't impeached with it. Didn't the jury hear that Gardner coerced or facilitated these commercial sex acts in October? We're not even talking about back in August.  Yes, so that was a really crucial period of time for the government's case. But we know that the text messages and anything coming from Mr. Gardner's phone during that period, we know that that specific period is exactly when MV1 lost her phone. We know that there are text messages from Mr. Gardner's phone that specifically identify MV1 as being the sender. So we know that who was in possession of Mr. Gardner's phone at that time is very much in dispute, which again relies on her testimony to show who was or was not. And again, that's the credibility issue. I see I am out of time, unless there are any further questions. We would ask this court to reverse and remand to vacate Mr. Gardner's conviction and proceed with a new trial unless, or at the very least an evidentiary hearing. Thank you. Thank you. Good afternoon, Your Honor. May it please the court, Nan Ho for the United States. Having been convicted by overwhelming evidence that he trafficked a minor, appellant Michael Gardner now seeks to overturn the jury finding by claiming that his trial counsel should have presented inadmissible evidence of his minor victim's sexual history unrelated to his charges. The court should affirm the district court's holding and reject Mr. Gardner's claim. First, Mr. Gardner's trial counsel's performance did not fall below an objective standard of reasonableness. Second, trial counsel performance, if deficient, did not prejudice Mr. Gardner given the overwhelming evidence against him. The trial court also did not abuse its discretion in resolving Mr. Gardner's claim without an evidentiary hearing. And the court should also reject Mr. Gardner's attempt to expand the certificate of appealability beyond the single issue that has been granted by the district court. Well, why wouldn't the testimony that now is sought to have been introduced show that the minor victim one was lying when she said on the stand that she had not engaged in sex work before? Yes, Your Honor, and this goes right to the question that Judge Larson asked my friend across the aisle. Because the victim here did not create an inconsistency for which the back page ad that Mr. Gardner said that should be admitted could be used for impeachment. And this is on the record at page 1541. The question was prefaced with when you got back with Michael, when you got together with Michael in the summer of 2016. On page 1452, 1453, there was a sidebar in which the government raised concern that the question could have been misinterpreted to include the entire sexual history of the victim. And counsel assured the court, and the court admonished counsel to stay within the bound of the Rule 12, which is at the period of time they have remand. This is also on page 1543, when counsel clarified to the minor victim, well, in the summer of 2015, you've remanded. This is on page 1554, question also was prefaced with when Michael started you doing prostitution. So the lines of question that trial counsel posed to the victim here are narrowed to the period of time when they already remanded. It is not to ask the victim about her entire sexual history. It is only after they have met. So the back page ad that the victim created before she met Mr. Gardner would not go to show that she lied about her answer, because she was never asked about her entire sexual history. And impeachment by inconsistency can only be used if there was an inconsistency. And this goes against to, and the government does not dispute that Rule 412 does allow for question about a victim's sexual history if it is goal for impeachment and not one of the prohibited purpose. But that's not the case here, because the victim did not make an inconsistent statement for which the evidence now sought to be introduced. So for example, if she had said on the stand, back page, I'd never heard of back page before Michael introduced me to that place to post advertisements, then impeachment would have been okay? Yes, Your Honor. It would have been, because at that point she has created an inconsistency for which the evidence now can be used to impeach her with. But that's not the case here. And that's why this case is distinguishable from Kettler. In Kettler, the victim had been untruthful with others about her prior sexual assault. And the defendant in this case wanted to confront her with that, because there has been a specific instance of the victim's untruthfulness. And in this particular instance, there has not been one of those specific instances. So how does the motion in Lemonnier ruling interact with your position here? Yes, Your Honor. And I would concede that the district court written in Lemonnier opinion could be read in the way that Mr. Gartner interpreted it to be, to limit it to only the period outside of the indictment time. But it also has to be read in the context of the motion, the response, and the transcript for the oral arguments in here. And it would not fall below an objective standard of reasonableness for the defense counsel, for trial counsel to interpret it as if it is unrelated to the charges, then for rule 412 would prohibit it. And rule 412 stands independent of the motion in Lemonnier. It does not limit government counsel to object to trial counsel's attempt to elicit a history of the victim's sexual work beyond the charges here. So even if the motion in Lemonnier only limited the period outside of rule of indictment, that does not mean that the evidence of the victim's sexual history unrelated to Mr. Gartner's charges, even if within the time frame of the indictment, can still be admissible. Because rule 412 stands independent of that opinion. But even if what Mr. Gartner trial counsel's performance can seem to be deficient, Mr. Gartner still failed to show that the likelihood of a different result absent counsel alleged error was substantial and not just conceivable. The jury can already infer that the victim engaged in prostitution before she met Mr. Gartner. The unadmitted back page act that Mr. Gartner now thought should have been introduced would only be merely cumulative. There has been testimony elicited about the account for the back page act that was created before the victim and Mr. Gartner met. The victim herself alluded to the past prostitution and she testified that some of the back page act listed her phone number, which clients on occasion call as the court observed. And as the district court observed, there was overwhelming evidence of Mr. In prostituting the victim at trial, there was evidence from Mr. Gartner's own phone showing illicit photos of the victim he sent to clients. Showing message from the victim to Mr. Gartner described what happened during the date. Your opponent was saying that the phone was not necessarily in Mr. Gartner's possession during that time. So how would that impact your position that it's overwhelming evidence? Well, there was a period during which Mr. Gartner did not have the phone, but there was other evidence when he possessed the phone. And there was testimony and contents of the phone showing that it was Mr. Gartner who possessed the phone, like text messages that he sent to other women. There was the signature of the way that he sent text to the victim. And the jury could infer from the contents of the phone of Mr. Gartner's possession of the phone, even if it was a short period of time that he did not have it. But the back page ad in October that was posted was the time period that Mr. Gartner had the phone. And then there was also, beyond just evidence of Mr. Gartner's phone numbers, there was Mr. Gartner's action during the undercover operation. And I would like to address one of the points that has been made. It is not true legally that the jury has to find that Mr. Gartner was the first one that caused the victim to become a prostitute or forced her to become a prostitute. The law does not require that. The law only require the government to prove that Mr. And that could include harbor, transport it, maintain and provide it. And the law also does not require the government to prove that the entire period of time or all of the commercial sex act engaged by the victim was caused by Mr. Gartner. The law only require the government to prove one commercial sex act during that period of time. And using force or threats of force, because I understand, so she's a minor. So that's one count, but the other, I mean, it's all in the same count. It's one theory of liability, is that she's a minor. The other theory of liability is that he used force or threats to cause her to engage in a sex act. And proving that increases his penalty, as I understand it. So doesn't the force or threats depend largely on her testimony? I mean, she testified that he beat her up on occasion, but when she didn't want to go do the sex acts. And I agree with you, you only need one. But is there any proof other than her testimony? Isn't her testimony the linchpin there? Yeah, her testimony would be the linchpin for that particular element of that subset of the first indictment. But that would affect his sentence, is that correct? I don't believe so, Your Honor. I think that it's carry the same sentence for either. My point is I'm not entirely clear on that. I'm not sure on that. But I think that it's the same mandatory minimum without the force with regard to the minor. And to get back to that point, the government does not have to prove that Mr. Gardner forced the victim to engage in commercial sex act the entire time. The jury was particularly instructed on this issue. That the fact that one has consented before does not prevent you from finding that she was forced later on. And this was page 2048 of the jury transcript. So just to- Did the jury have to come to an agreement as to which event it was that violated the statute, or could each juror come to different answers? My understanding is that it does not have to be on a particular date, because the indictment alleged a period of time. But in this case, I thought that the jury form indicated that all the jurors agreed as to both theories of liability. I think that's record 77. Your Honor, you only read the record much better than I have. We can look at it. That's my understanding, is that they unanimously agreed as to both theories. That might be the case. We can look at it. I'm not entirely clear on that. But without the victim's testimony in this case, Mr. Gardner's action on the day of the undercover operation is sufficient enough for the jury to convict him of count one. He provided the transport to the victim to the hotel. And this is not the victim's testimony. This is the cousin who drove the victim and Mr. Gardner to the hotel, stated that he was the one that arranged for the transportation. And his action during that period of time proved his guilt. He waited across the street to monitor what was happened. There was text message during the operation of him asking the victim what was happening, telling her that he would be across the street, and then panicking when the police barged into the hotel room. And then there was evidence of conscience of guilt when he lied to the police about where his phone was. Mr. Gardner's jail calls further substantiate the jury finding here. He admitted slamming the victim. He admitted that his cousin stole her phone, which corroborate her testimony. And then he asked his mom to bribe the victim. So unlike what Mr. Gardner now asserts, the victim's testimony is not the only evidence on which the jury find him guilty of sex trafficking the minor victim here. There was, like the district court judge found, there was overwhelming evidence of Mr. Gardner's involvement in the victim's commercial act. Then the district court also did not abuse the discretion and resolve Mr. Gardner's claim without an evidentiary hearing here. There is no factual dispute as to what happened at trial. The victim's testimony stands for itself. The fact that- I thought that the idea behind having an evidentiary hearing was so that there could be an exploration of what trial counsel for the defendant was thinking about in not doing these various things that are the basis for the 2255. Donna, that's what they alleged to be the disputed fact here. But even if that can be considered a disputed fact, the standard here is objective. But the overwhelming evidence in here showed that the record and the governing law conclusively show that he would not be entitled to release. Because he has not shown that the likelihood of a different outcome would be substantial and not just conceivable here. Given the amount of evidence that was presented as trial to prove his guilt. And then finally, the court should reject his attempt to expand the certificate of appealability here. There's a claim that he should be able to do an evidentiary hearing to investigate the data from his phone. That's not one of the claims that was raised in the underlying petition. The court in its order on September 14 of 2020 through delineate outlined the four arrows that was raised in the underlying petition. And failure to investigate Mr. Gardner's own phone is not one of those. So for those reasons, we would ask that the court affirm the district court holding. Thank you. All right, just a few minutes or just a few notes on rebuttal, your honors. The first one, which we had kind of touched on before, the government really emphasizes that this maybe wasn't even a lie to begin with. But looking at page 1454 of the record, we know that she specifically says she has never put ads on back page. Regardless of the context. But before that, that is a lie. And if there's any question about that, that is either for the jury to answer or for an evidentiary hearing. Wait, wait, wait. But this is, the question is, we're in the summer of 2015. You've re-met Michael. At first everything is fine. Then Michael started you doing prostitution. That's your testimony. Yes. When Michael started you doing prostitution, did you, so in that time frame, did you start out putting ads on back page? Yes, he did start putting ads on back page. Right. You corrected me in a way to say yes, he started putting ads on back page. Not you started putting ads on back page. Yes, because you never put the ads on back page right. So isn't that just all in that time period? I think the transition to him asking, did Mr. Gardner, is he the reason that you started that, changes that context from prior to after they met. And then that's what makes. So the lie is because you never put the ads on back page right. Yes, but that Mr. Gardner was the one that started her, was the one that started the back page post is also a lie. But I think it creates the transition. And again, if there's any question of that, that should be addressed in an evidentiary hearing or is a question for the jury to determine on their own once they have full understanding of her credibility. And just some points that the government made about some of the evidence that was presented, just a few of them that he drove to the hotel, that he stayed across the street, and that there were jail, sorry, that there were jail calls. The drove to the hotel and staying across the street, none of that shows causation of sex work. And we know that there was a dispute over why Mr. Gardner believed he was driving her to the hotel. And that is a direct contradiction between their testimonies, which again, if you dispute her credibility, it disputes her story. And with the jail calls, everything falls into bucket number two, all of this evidence does. But whether you can, sorry, it doesn't matter whatever inference they make that he knew or that maybe he wasn't treating her right based on allegations of abuse, but none of it shows that he caused or forced her sex work. None of it does without her testimony, and that is the critical point here. And if you dispute her testimony, you dispute the causation, and it's reasonably likely that the jury would not convict beyond a reasonable- If you were to have an evidentiary hearing, is it your thinking that the sole testimony would be that of the attorney asking the attorney why he did not handle that August back page evidence as you think he should have, or would there be other evidentiary issues that you would address from other witnesses? We definitely think that that would be the most important step to take. We also think that Mr. Gardner has information to provide about events that occurred at trial of him bringing this problem to his counsel's attention. We also believe that MV1's testimony could help in the dispute on the interpretation of the words that she said during trial. At the end of the day, the district court's certificate of appealability was very broad. It was just whether an evidentiary hearing is necessary. So we would ask for a general remand on that issue and let the court determine. And as to the data in the phone, the issue would be who had possession of the phone at different times, whether it was MV1 or Mr. Gardner. And the government pointed out that specifically the time that the posts were made specifically, Mr. Gardner had possession of the phone, but we don't know that. We know that there's dispute of who had the phone and that is all that we can know. Was that dispute presented to the jury, that there was a question as to who had possession of the phone? Yes, because Mr. Gardner testified that he did not have the phone and he was not with MV1. He was with another woman during those period of a few days in October. Thank you. Thank you both for your argument. And Ms. Claussen, I want to thank you in particular as a law student. You've done an excellent job and we're always delighted to have law students come argue cases in front of us because in general, law students are so supremely well prepared. And I know it's a daunting matter to be in front of three actual judges and I'm sure that the AUSA feels similarly in her beginning arguments when they happened. But we appreciate your representation of your client and your excellent work on both sides and we thank your sponsor at the law school as well for the work that he does. So thank you both and the case will be proceeded in due course at our end.